USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

GARY M. COHEN,                              :        06 Civ. 482 (RJH) (THK)
                                            :        07 Civ. 1288 (RJH) (THK)
                        Plaintiff,          :
                                            :
        -against-                           :        **OPINION AND ORDER**
                                            :
FEDERAL EXPRESS CORP.,                      :
                                            :
                        Defendant.          :
                                            :
------------------------------------------------------------x


        Plaintiff Gary Cohen ("Plaintiff"), proceeding *pro se*, brings these consolidated

actions pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act

("ADEA").  Plaintiff also asserts claims arising under the Employee Retirement Income

Security Act of 1974, 29 U.S.C. § 1140 ("ERISA").  He alleges that during the course of

his employment with FedEx Corporate Services Inc. ("FedEx Services" or "FedEx"),

managers and employees of FedEx discriminated against him because of his race, gender,

and age, retaliated against him after filing a complaint through FedEx's internal Equal

Employment Opportunity ("EEO") investigation process, and violated his rights under

ERISA when his position with FedEx was reclassified.[1]

---

[1]  Plaintiff also asserted claims for sexual orientation discrimination and discrimination based on disability.
However, those claims were either withdrawn or dismissed.  (*See* Order, dated Apr. 20, 2007; Exhibit
("Ex.") A, annexed to Defendant's Reply Brief in Support of its Motion for Summary Judgment ("Def.'s
Reply"), Transcript of Conference, dated Dec. 8, 2007, at 70.)  Plaintiff's opposition papers to Defendant's
Motion for Summary Judgment also make reference to a violation to the Internal Revenue Code; however,
that claim has never been presented to the Court and will not be addressed.

Pretrial discovery has been completed and presently before the Court is

Defendant's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure

56. For the reasons set forth below, Defendant's motion is granted and Plaintiff's claims

are dismissed with prejudice.

## BACKGROUND

The following facts are largely undisputed.[2] Plaintiff was an employee of Federal

Express for sixteen years; he was with FedEx Services from 2000 until his termination on

July 25, 2005. (*See* Def.'s 56.1 ¶ 1.) Plaintiff's claims arise primarily out of two

significant events: (1) the reclassification of Plaintiff's position within FedEx Services,

and (2) a change in Plaintiff's manager leading to his relocation from Massachusetts to

New York.

## I. Reclassification

In March of 2004, FedEx reclassified Plaintiff, and all other employees with the

title and job of Sales Coordinator, to a Manager Administrator position. (*See id.* at ¶ 3.)

---

[2] Plaintiff has admitted many facts as a result of his failure to properly respond to Defendant's Statement of Undisputed Material Facts, submitted pursuant to Local Civil Rule 56.1 ("Def.'s 56.1"). The Court notes that Defendant provided Plaintiff with the required notice, warning him that his failure to properly respond could result in facts being deemed admitted. (*See* Defendant's Notice to Pro Se Litigant Opposing Motion for Summery Judgment.) This Court also provided Plaintiff notice of the requirements of Local Rule 56.1 in an Order dated May 24, 2007, at 15 n. 8. Furthermore, Defendant prompted Plaintiff to respond to its Rule 56.1 statement by including the word "RESPONSE:" after each paragraph and providing space for Plaintiff to admit or deny the facts contained therein. Each of Defendant's assertions of fact in its Rule 56.1 submission is supported by competent evidence. Finally, Plaintiff's submissions do not include a sworn statement, executed by Plaintiff, as to his version of events. Because there is competent evidence in the record supporting Defendant's Rule 56.1 assertions, and they have not been disputed, they are deemed admitted. *See Allen v. City of New York*, 480 F. Supp. 2d 689, 703 (S.D.N.Y. 2007) ("If the opposing party fails to respond to the moving party's Rule 56.1 Statement, then the material facts contained in the moving party's statement are deemed admitted as a matter of law (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)); *see also Am. Med. Ass'n v. United HealthCare Corp.*, No. 00 Civ. 2800 (LMM), 2007 WL 1771498, at *2 (S.D.N.Y. June 18, 2007) ("When parties decline to file Rule 56.1 statements, or when the statements they file lack citations or are in some other way deficient, courts are 'free to disregard' the assertions therein." (citing *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001))).

FedEx protected the former Sales Coordinators' salaries by keeping them at the same level as they were before the reclassification. (*See id.* at ¶¶ 5, 6.) The reclassification had no relationship to changes made to FedEx's pension plan offerings, which had occurred a year earlier. (*See id.* at ¶ 7.)

FedEx's original pension plan was a "non-contributory plan" funded by FedEx, in which employees did not contribute to the plan. (*See id.*) In June of 2003, FedEx began offering employees a choice between the existing plan and a portable plan to which employees could contribute. (*See id.*) None of the pension plan changes instituted by FedEx resulted in a lower salary or different pension benefits for Plaintiff. (*See id.* at ¶¶ 6, 7.)

Plaintiff contends, however, that Defendant "'illegally reclassified' hundreds of nationwide salaried employees and turned them into hourly secretaries, capping their salaries and affecting the formula for their long term annuity pension contribution while changing the terms and conditions of these employees." (*See* Plaintiff's Objection to Defense Motion for Summary Judgment ("Pl.'s Opp.") 2.) Plaintiff does not offer any admissible evidence in support of this allegation.

## II. Plaintiff's Manager Changes and He Relocates to New York

Plaintiff's discrimination claims arise primarily out of his contentious relationship with his final manager, Elliott Phipps ("Phipps"), and disagreements about his job requirements while working for Phipps.[3] An overview of Plaintiff's employment history at FedEx Services is therefore helpful to understand the context in which his claims arise.

---

[3] Phipps is a forty-three year-old African-American male. (*See* Ex. B, annexed to Defendant's Motion for Summary Judgment, Declaration of Elliott Phipps, dated May 29, 2007 ("Phipps Decl.") ¶ 2.)

On June 1, 2000, Plaintiff became a Sales Coordinator for FedEx Services—a
newly created, wholly owned subdivision of Federal Express Corporation. (*See* Def.'s
56.1 ¶¶ 1, 2.) The Sales Coordinator position was created to assist management and
account executives in gathering and analyzing customer data. (*See* Ex. C annexed to
Defendant's Motion for Summary Judgment ("Def.'s Mot."), Declaration of Patrick
Hillis, dated May 29, 2007 ("Hillis Decl.") ¶ 3.) Over time, as access to data was made
more readily available electronically, the position changed to serve a more administrative
function. (*See id.*) In March of 2004, FedEx Services re-classified Plaintiff, and all Sales
Coordinators company-wide, to Manager Administrators. (*See* Def.'s 56.1 ¶ 3.) As a
result, Plaintiff's job duties changed so that he was providing administrative support to
one manager. (*See* Ex. A. annexed to Def.'s Mot., Declaration of Tim Jones, dated May
29, 2007 ("Jones Decl.") ¶ 4.)

Prior to his reclassification, from 2000 until 2003, Plaintiff was working out of
FedEx's Peabody Massachusetts office, and supporting Scott McFadyen. (*See id.*)
McFadyen retired in 2003 and the sales region was reorganized. (*See id.*) The Boston
territory office was moved to Manhattan, and Plaintiff began working under Phipps. (*See
id.*) Nevertheless, Plaintiff stayed in Massachusetts and attempted to provide
administrative support remotely until 2004. (*See id.*) Plaintiff was occasionally required
to travel to New York. (*See* Ex. E annexed to Def.'s Mot., Plaintiff's Deposition ("Pl.'s
Dep.") at 141.) When he traveled, his expenses were fully reimbursed. (*See id.*)

In 2004, Plaintiff agreed to move to Manhattan and requested that FedEx
reimburse his relocation expenses. (*See* Ex. B, annexed to Defendant's Motion for
Summary Judgment, Declaration of Elliott Phipps, dated May 29, 2007 ("Phipps Decl.")

¶ 6.) However, Management Administrators are non-exempt employees and are not eligible to have relocation expenses reimbursed. (*See* Def.'s 56.1 ¶¶ 10, 11.) Despite this, Phipps decided that he would submit a request for an exemption from that policy, and in August of 2004, he submitted a "Relocation Request Form" and a "Relocation Exception Form" on Mr. Cohen's behalf. (*See* Phipps Decl. ¶ 6.) Plaintiff relocated to New York before the issue was resolved. (*See* Def.'s 56.1 ¶ 15; *see also* Phipps Decl. ¶ 7.) The request for an exception to the policy was ultimately denied by Michael Moriarty, the Vice President of Sales. (*See* Ex. F annexed to Def.'s Mot., Declaration of Michael Moriarty, dated May 28, 2007 ("Moriarty Decl.") ¶ 3.) Plaintiff, however, asserts that he was promised that his relocation expenses would be reimbursed.[4]

Plaintiff was dissatisfied with the denial of his relocation request, as well as with Phipps's management of his work. Utilizing FedEx's internal EEO process, Plaintiff filed an internal EEO complaint with FedEx in October of 2004. (*See* Ex. D annexed to Def.'s Mot., Declaration of James Wallace, dated May 29, 2007 ("Wallace Decl.") ¶ 10.) The complaint listed approximately thirty-six "charges" detailing what Plaintiff viewed as retaliatory or harassing action on the part of Phipps, and alleged that the actions discriminated against Plaintiff of the basis of race, age, and gender. (*See* Ex. A annexed to Wallace Decl., Employee Information Statement filed by Gary Cohen, dated October 12, 2004.)

---

[4] Plaintiff brought a claim for breach of contract based on the denial of his relocation benefits in the Civil Court of the City of New York on December 8, 2006. Defendant then removed that claim to this Court. (*See* Notice of Removal of State Court Action to the Southern District of New York, filed Jan. 31, 2007.) However, that claim was dismissed and remanded back to the Civil Court in an Order by this Court dated March 2, 2007.

Among the thirty-six actions Plaintiff alleges were discriminatory, retaliatory, or harassing were:[5]

(1)     "placing items of [Phipps's] responsibility squarely on [Plaintiff's] shoulders without providing [him] guidance or assistance to perform [his] job functions";

(2)     "highly suspect and questionable communication practices";

(8)     leaving a "purple file" which contained, inside, a reference to a female secretary, "positioned [on Phipps's desk] so that [Plaintiff] would come across the file" and "bait" him into reading it";[6]

(11)    "provid[ing] [Plaintiff] unacceptable lead times for several projects knowing the scope of the projects and level of work involved," and changing "performance review criteria" after-the-fact and "just prior to [Plaintiff's] review";

(20)    "directly avoid[ing] granting [Plaintiff] approvals to enter overtime compensation for work performed and after hours FedEx related activities";

(33)    being "the only one person" asked to move back to a FedEx office and taking away his work-from-home arrangement.

Plaintiff does not identify any specific evidence indicative of an intent on the part of FedEx Services employees to discriminate or retaliate against him based on his age, race, gender, or EEO activity. Rather, Plaintiff views the actions themselves as

---

[5] For the complete list, *see* Plaintiff's "3-Ring Binder" ("Pl.'s Binder"), a document titled "Corporate Sales EEOC Harassment Complaint," dated Oct. 6, 2004, at approx. 78 (pages not numbered).

[6] *See* Pl.'s Dep. at 125–26.

6

harassment, and then asserts, "No one else is being harassed . . . being treated in this
fashion . . . [or] filed an EEO on their manager . . . ." (*See* Pl.'s Binder, "Federal EEOC
Filing Addendum," at 2.) Further, Plaintiff claims: "I am the only openly gay person . . .
only male in my job . . . oldest person performing my job in the region." (*See id.*)
Plaintiff has not provided any evidence to support these assertions, and Defendant notes
that Plaintiff was the only Administrative Manager for Phipps. (*See* Phipps Decl. ¶ 5.)

On November 19, 2004, during the internal EEO investigation, Phipps attempted
to issue Plaintiff a disciplinary letter for showing up to work late. (*See* Pl.'s Dep. at 220–
23.) Plaintiff became upset and went to James Wallace ("Wallace"), his Human
Resources representative, to complain. (*See* Wallace Decl. ¶ 11.) Plaintiff was "loud,
aggressive, and threatening." (*Id.*) Wallace was concerned that Plaintiff would harm
Phipps, and contacted FedEx Services Security Threat Assessment Group. (*See id.* at
¶ 12.) Citing this, and other problems with Plaintiff's work performance, Plaintiff was
suspended with pay, pending the outcome of the internal EEO investigation. (*See id.* at
¶ 13.)

Plaintiff was suspended, in part, because he refused to work with Phipps during
the pendency of the internal EEO investigation. (*See* Ex. A annexed to Phipps Decl.,
Inter-Office Memorandum, dated Nov. 22, 2004, suspending Plaintiff for insubordination
"pending the outcome of the internal EEO Investigation.") Plaintiff sent an e-mail to
Phipps which included the following declaration: "I do not intend of [sic] being here to
assist or work with you for future action items. I'm not sure if this was made clear with
my filing of the EEOC [sic.]." (Ex. 10, annexed to Pl.'s Dep., e-mail from Plaintiff to
Phipps, dated Nov. 18, 2004.) Plaintiff returned to work after the suspension, on

December 17, 2004. (*See* Wallace Decl. ¶ 13.) Tim Jones ("Jones"), Phipps's supervisor, together with Wallace, investigated Plaintiff's claims and found no evidence of discrimination or retaliation. (*See* Jones Decl. ¶ 8.)

After returning from his suspension, Plaintiff's work performance did not meet his manager's expectations. (*See, e.g.*, Phipps Decl. ¶¶ 8, 28.) For example, Plaintiff would not timely complete and submit reports required by the Manhattan sales team. (*See* Def.'s 56.1 ¶ 22.) Plaintiff also failed to attend important district level meetings without notifying Phipps about his absence.[7] (*See id.* at ¶ 27; Phipps Decl. ¶ 17.) Plaintiff also failed to complete tasks he had been assigned which were important to work Phipps was doing, forcing Phipps to do the work himself at the last minute. (*See* Phipps Decl. ¶ 25.) Plaintiff was also chronically late. (*See id.* at ¶ 27.) Plaintiff's overall performance declined to the point that Phipps considered him a liability to the sales district. (*See id.* at ¶ 30.)

Plaintiff was also issued various disciplinary letters pursuant to FedEx's Progressive Discipline policy. (*See* Def.'s 56.1 ¶ 19.) Phipps issued Plaintiff at least two formal disciplinary notices: a Letter of Counseling for Unacceptable Conduct, dated February 8, 2005, for reporting late to work (*see* Ex. 13 annexed to Pl.'s Dep.), and a Letter for Unacceptable Conduct, dated March 18, 2005 (*see* Ex. C annexed to Phipps Decl., listing areas in need of improvement by Plaintiff). Phipps also issued Plaintiff a number of informal disciplinary notices such as an e-mail, dated December 21, 2004 (*see* Ex. 12 annexed to Pl.'s Dep.), and an internal-office memorandum, dated April 6, 2005 (*see* Ex. 18 annexed to Pl.'s Dep.).

---

[7] Although Plaintiff claims to have called about his absence, and to have possessed phone records to support that claim, that evidence is not in the record before the Court.

In March of 2005, Phipps initiated a process whereby Plaintiff was asked to identify measures that he could take to improve his performance. (*See* Def.'s 56.1 ¶ 41.) It called for Plaintiff to complete a Performance Planner, which Plaintiff eventually completed after some initial resistance. (*See id.* at ¶ 42; *see also* Ex. 17 annexed to Pl.'s Dep.)

Plaintiff claims that during this time his health was deteriorating. (*See* Pl.'s Dep. at 228, 256–60.) In April 2005, Plaintiff requested medical leave under the Family Medical Leave Act ("FMLA"). (*See* Wallace Decl. ¶ 17; Phipps Decl. ¶ 32.) He received and completed an FMLA leave packet and was informed that he was required to submit medical documentation and a medical release to return to work. (*See* Ex. 21 annexed to Pl.'s Dep.) However, Plaintiff did not comply with FedEx's requirement that he submit medical documentation verifying that he was unable to work.[8] After numerous notifications and failed attempts to have Plaintiff submit the required note from his doctor, FedEx considered Plaintiff to be on an unauthorized leave of absence. (*See* Phipps Decl. ¶ 36; *see also* Def.'s 56.1 ¶¶ 46, 47; Ex. 22 annexed to Pl.'s Dep.)

When informed of this, Plaintiff attempted to return to work. (*See* Phipps Decl. ¶ 35.) However, because Plaintiff did not have a medical release from a doctor indicating that he could return to work, Plaintiff was prevented from entering the building where he worked. (*See id.*)

Plaintiff also applied for short-term disability leave in April of 2005. (*See* Def.'s 56.1 ¶ 48.) However, after an initial investigation by a third-party claims adjuster, Broadspire, Plaintiff refused to sign required medical releases and instructed his doctor

---

[8] Plaintiff claimed to have the required medical documents; however, those documents were never submitted to the Court and are not part of the record.

not to give out any additional information. (*See* Declaration of Marlyn Hipple, dated June 7, 2007 ("Hipple Decl.") ¶¶ 2, 3.) Based on the limited information it had, Broadspire determined that there were "insufficient objective findings to support Mr. Cohen's inability to perform the essential elements of his occupation." (Def.'s 56.1 ¶ 49; *see also* Hipple Decl. ¶ 4.) As a result, Plaintiff's short-term disability claim was denied, rendering his time away from FedEx unauthorized leave. (*See* Phipps Decl. ¶ 36.) Because of Plaintiff's extended unauthorized absence from work, his poor work performance, and prior insubordination, Phipps issued Plaintiff a letter of termination on July 25, 2005, effective that day. (*See id.*; Ex. 23 annexed to Pl.'s Dep.)

III. Plaintiff's EEOC Claims and the Filing of These Actions

On April 14, 2005, before Plaintiff was terminated, he filed a charge of discrimination against FedEx with the Equal Employment Opportunity Commission ("EEOC"). (*See* Def.'s 56.1 ¶ 54.) His claim was dismissed and Plaintiff was issued a Right-to-Sue letter, dated September 13, 2005. (*See id.* at ¶ 55; *see also* Ex. L annexed to Def.'s Mot., Copy of Plaintiff's EEOC Right-to-Sue Letter.)

On December 19, 2005 Plaintiff filed his first Complaint in these actions, together with a letter indicating that he wished to proceed *in forma pauperis* ("IFP"). (*See* Letter annexed to Complaint in 06 Civ. 482.) However, on January 5, 2006, the Court's *Pro Se* Office sent Plaintiff a letter informing him that his December 19, 2005 filing was incomplete, and enclosed an application to proceed IFP for Plaintiff to complete and return. (*See* Letter from *Pro Se* Office, dated Jan. 5, 2006, annexed to Plaintiff's application to proceed IFP.) The IFP application was signed by Plaintiff on January 12, 2006, and granted on January 20, 2006. (*See id.*; *see also* Def.'s 56.1 ¶ 57.)

10

On May 6, 2006, Plaintiff filed a Complaint in Massachusetts Superior Court that asserted claims similar to those asserted in this case. (*See* Transferred Case 07 Civ. 1288, Massachusetts Superior Court Complaint, filed May 6, 2006.) On August 11, 2006, Defendant removed the Massachusetts state action to the United States District Court for the District of Massachusetts on the basis of federal question and diversity jurisdiction, and subsequently filed a motion to dismiss or, in the alternative, to transfer the action to the United States District Court for the Southern District of New York. (*See Cohen v. Federal Express Corp.*, 06-11418-NMG, Memorandum and Order, dated Dec. 20, 2006, at 1.) In a December 20, 2006 Memorandum and Order, the Honorable Nathaniel Gorton, United States District Judge for the District of Massachusetts, granted Defendant's motion to transfer the case to this Court. (*See id.* at 7.) The action was subsequently transferred to this Court and docketed on February 21, 2007. This Court then consolidated Plaintiff's two cases. (*See* Memorandum Opinion and Order, dated March 12, 2007.)

## DISCUSSION

Defendant moves for summary judgment, arguing that: (1) Plaintiff's claims are untimely because (a) Plaintiff failed to commence these lawsuits within ninety days from the date he received his "right-to-sue" letter from the EEOC, and (b) Plaintiff's age discrimination claim is time-barred by the statute of limitations; (2) the named defendant, Federal Express Corporation, is an improper party because FedEx Services Corporation is the proper defendant; and (3) Plaintiff has failed to establish that there are any disputed material facts which would indicate that FedEx wrongfully discriminated or retaliated

11

against Plaintiff. Plaintiff has responded by submitting an unsworn letter alleging a hostile work environment created by FedEx that resulted in his "constructive termination." (*See* Pl.'s Opp.) Specifically, Plaintiff contends that FedEx took the following wrongful actions, which he claims are discriminatory and retaliatory: (1) non-reimbursement of his relocation expenses, (2) making him sick and forcing him into "a deteriorating health condition and into a state of mental anguish and depression," (3) conducting a private investigation of him which has invaded his personal privacy,[9] and (4) the "illegal[] reclassifi[cation]" of employees, and capping their salaries, which "affect[ed] the formula for the long term annuity pension contribution . . . ." (*See id.*) Plaintiff's letter also cites to other discrimination cases brought against FedEx, in other parts of the country, as proof of his claims. Finally, attached to Plaintiff's letter is a log of the numerous calls Plaintiff made to Defendant's counsel during the course of litigation in this case, Defendant's responses to Plaintiff's written deposition questions, Defendant's responses to Plaintiff's request for documents, and Plaintiff's responses to interrogatories and Defendant's request for admissions. (*See* documents annexed to Pl.'s Opp.)

I. Timeliness of Plaintiff's Claims

  Defendant argues that Plaintiff failed to commence suit within ninety days of receiving his right to sue letter, and, therefore, the case must be dismissed. Defendant also argues that Plaintiff's ADEA claims, to the extent they rely on the reclassification of Plaintiff's position in 2004, are barred by the statute of limitations because Plaintiff did

---

[9] Plaintiff continues to allege that FedEx is harassing and spying on him in Florida, allegations this Court cannot and will not address. (*See* Endorsed Letter, dated Nov. 20, 2007; *see also* Order, dated Feb. 7, 2007, notifying Plaintiff that *ex parte* communications with the Court will be disregarded.)

not file a complaint with the EEOC within 300 days of the reclassification. The Court agrees on both accounts.

## A. Ninety-Day Time Limit

Absent equitable considerations, a claim under Title VII or the ADEA must be filed within ninety days of the claimant's receipt of a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); *see also Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996); *Celestine v. Cold Crest Care Ctr.*, 495 F. Supp. 2d 428, 432 (S.D.N.Y. 2007) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam)); *Ruiz v. New York City Fire Dep't*, No. 00 CIV. 4371 (AGS), 2001 WL 767009, at \*2 (S.D.N.Y. July 9, 2001). Time limits "are not to be disregarded by courts out of a vague sympathy for particular litigants." *Holowecki v. Federal Express Corp.*, 440 F.3d 558, 563 (2d Cir. 2006), *aff'd on other grounds*, 128 S. Ct. 1147 (2008) (quoting *Baldwin County*, 466 U.S. at 148 n.1) (internal quotation marks omitted).

Plaintiff's right-to-sue letter is dated September 13, 2005, and was mailed on that date. (*See* Ex. M annexed to Def's Mot.) It is presumed that Plaintiff received the letter within three days, *i.e.*, by Friday, September 16, 2005. *See Sherlock*, 84 F.3d at 525 (a party is presumed to have received a letter sent from the government three days from when it was sent) (citing *Baldwin County*, 466 U.S. at 148 n.1). Plaintiff does not dispute this presumption. Plaintiff's Complaint was filed on December 19, 2005, four days after the ninety-day limit within which Plaintiff must have filed his complaint.[10]

---

[10] Even if the Court assumed that Plaintiff did not receive the notice until the following Monday, September 19, his Complaint would still have been one day late. Defendant argues, not unreasonably, that Plaintiff's Complaint should be considered filed as of January 12, 2006, when Plaintiff properly filed his IFP application. *See Toliver v. Sullivan County*, 841 F.2d 41, 42 (2d Cir. 1988) (finding that filing of a complaint with the *pro se* office, *along with* application to proceed *in forma pauperis*, was proper date to consider a complaint "filed" for purpose of the 90-day filing period calculation). Nonetheless, even if the

Like the plaintiff in *Baldwin County*, Plaintiff here was notified of the ninety-day deadline and has not advanced any reason why that time should be equitably extended. *See Baldwin County*, 466 U.S. at 151–52. Thus, because there is no factual dispute that Plaintiff's discrimination claims are untimely, Defendant is entitled to summary judgment dismissing the claims with prejudice. *See id.* at 151–52; *see also Molnar v. Legal Sea Foods, Inc.*, 473 F. Supp. 2d 428, 431 (S.D.N.Y. 2007) (granting motion to dismiss for failing to meet ninety-day deadline, despite a *pro se* plaintiff's claim of medical incapacitation); *Toolan v. Bd. of Educ. of City of New York*, Nos. 02 Civ. 6989 (DC) & 03 Civ. 576 (DC), 2003 WL 22015437, at *2 (S.D.N.Y. Aug. 25, 2003) (dismissing claim filed one day late, because there was no basis for application of the doctrine of equitable tolling); *Sanchez v. Nat'l Cleaning Co.*, 11 F. Supp. 2d 453, 455 (S.D.N.Y. 1998) (dismissing *pro se* plaintiff's complaint filed two days late).

## B. Plaintiff's ADEA Claims Based on Reclassification

Plaintiff's ADEA claims, to the extent they are based on the reclassification of his position, are time-barred for another reason. A plaintiff alleging discrimination under the ADEA must file a charge of discrimination with the EEOC within 180 days after the claim accrued, or within 300 days after the claim accrued if he has filed a charge with a state agency that has authority to investigate such claims. *See* 29 U.S.C. §§ 626(d)(1), 633(b); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 93 (S.D.N.Y. 1999). Plaintiff's job was reclassified in March of 2004. Plaintiff filed his EEOC complaint in April of 2005, over 400 days later. Accordingly, any discrimination or retaliation claims related to the

Court considered Plaintiff's Complaint to have been filed on the earlier date of December 19, 2005, it would still be time-barred.

reclassification of his position are time-barred. *See Boise v. New York Univ.*, No. 00 Civ.
7844 (RWS), 2003 WL 22390792, at *4 (S.D.N.Y. Oct. 21, 2003) (finding ADEA claim
filed more than 300 days after the alleged discriminatory act to be time-barred).[11]

## II. Plaintiff's Discrimination Claims are Without Merit

Even if the Court were to rule on the merits of Plaintiff's discrimination claims, it
would recommend that Defendant be granted summary judgment. After a careful review
of the record, the Court concludes that Plaintiff has not come forward with any evidence
of disputed material facts which might permit a rational finder of fact to conclude that
Defendant's employment decisions were based upon animus to Plaintiff's age, race,
gender, or EEO activity. *See Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.
1997) ("The plaintiff's admissible evidence must show circumstances that would be
sufficient to permit a rational finder of fact to infer that the defendant's employment
decision was more likely than not based in whole or in part on discrimination.").
Plaintiff's unverified and speculative claims, unsupported by admissible evidence, do not
create material issues of fact. *See McPherson v. New York City Dep't of Educ.*, 457 F.3d
211, 215 n.4 (2d Cir. 2006) ("Speculation alone is insufficient to defeat a motion for
summary judgment.").

First, Plaintiff is unable to meet the admittedly low burden of presenting a *prima
facie* case of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003)
(citing the burden-shifting analysis in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792
(1973)). As an initial matter, few of the thirty-six actions Plaintiff complains of

---

[11] Defendant Federal Express Corporation also contends that it never employed Plaintiff and is therefore an
improper party to this litigation. Plaintiff has not disputed this contention. Thus, Defendant would also be
entitled to summary judgment for failure to sue the proper party. However, were this case to proceed, there
is a possibility that the correct defendant, FedEx Services, could be properly joined pursuant to Rule 19 of
the Federal Rules of Civil Procedure.

15

constitute adverse employment actions. Additionally, there is no evidence in the record to suggest a causal connection between Plaintiff's race, age, or EEO complaints and the disciplinary actions which were taken against him. Plaintiff has failed to point to any evidence indicating that he was treated differently than similarly situated employees, or that his employer made derogatory comments about his gender, age, race, or EEO complaints. Ultimately, while Plaintiff complains Defendant's actions were unfair, retaliatory, or "harassing," there is simply no evidence to conclude the actions were taken because of Plaintiff's age, race, gender, or his internal EEO complaint. Thus, the Court concludes that Plaintiff has not demonstrated a *prima facie* case of discrimination or retaliation.

Furthermore, Defendant has come forward with competent evidence, admitted to by Plaintiff, demonstrating legitimate non-discriminatory reasons for their actions— periods of unexcused absences, chronic tardiness, insubordination, and poor work performance. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–58 (1981) (stating that defendants in a Title VII case alleging discriminatory treatment can rebut the presumption of discrimination arising from plaintiff's establishment of a *prima facie* case by presenting clear and specific non-discriminatory reasons for their actions).

Finally, Plaintiff has not presented any admissible evidence indicating that Defendant's proffered reasons were merely a pretext for unlawful discrimination or retaliation. *See Burdine*, 450 U.S. at 253; *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004). Rather, Plaintiff offers a variety of reasons as to why he should not have been held responsible for his tardiness, insubordination, or extended unauthorized

16

Case 1:06-cv-00482-RJH   Document 59   Filed 03/31/08   Page 17 of 20

leave, and denies any poor work performance.[12] (*See, e.g.*, Pl.'s Dep. at 233 (claiming Defendant held Plaintiff to different standards, but admitting that his manager had the authority to set Plaintiff's work hours).) Plaintiff's unverified assertions are insufficient to allow any rational factfinder to conclude that Defendant's reasons for its conduct were anything other than legitimate and non-discriminatory. The Court, therefore, concludes that Defendants are entitled to summary judgment on Plaintiff's discrimination and retaliation claims.

## IV. Plaintiff's ERISA Claims

Plaintiff appears to argue that his reclassification from a Sales Coordinator to a Manager Administrator resulted in a salary cap, which reduced the amount of monetary contributions FedEx made to Plaintiff's pension, and that this reclassification violated ERISA. This claim is meritless.

Although he does not specify, the Court construes Plaintiff's claim as arising under 29 U.S.C. § 1140, which prohibits discrimination against a retirement plan participant for the purpose of interference with a retirement plan claimant's rights under the company's benefit plan. This provision provides in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

29 U.S.C. ¶ 1140.

---

[12] Whether au employee's job performance is satisfactory is evaluated according to the employer's legitimate expectations. *See Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985) (quoting *Huhn v. Koehring Corp.*, 718 F.2d 239, 244 (7th Cir. 1983)); *see also Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128–29 (2d Cir. 2004).

17

"Section 510 was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (internal quotation marks omitted). To prove a claim under this statutory provision, Plaintiff must show that his job reclassification was at least motivated in part by the specific intent to interfere with the attainment of a vested right under FedEx's pension plan. *See id.*; *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997). The law is clear that "no ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, [an employment decision]." *Dister*, 859 F.2d at 1111; *accord Lightfoot*, 110 F.3d at 906. The Second Circuit has adopted the burden-shifting test applicable to discrimination claims under Title VII, set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), for the assessment of discrimination claims brought pursuant to ERISA. *See Dister*, 859 F.2d at 1111.

As with his Title VII and ADEA discrimination claims, Plaintiff has not put forth any evidence that would permit a reasonable factfinder to conclude that his rights under ERISA were violated. When FedEx implemented the job reclassification, it did so because the Sales Coordinators were no longer needed in the capacity in which they previously worked. There is no evidence whatsoever indicating that the reclassification was undertaken for the purpose of interfering with Plaintiff's or any other employee's pension benefits.

Furthermore, there is no evidence that the job reclassification interfered with a right Plaintiff was entitled to under the FedEx retirement plan. Plaintiff's pension rights

were not altered. Indeed, Plaintiff's salary was not even reduced when his job was reclassified. (*See* Hillis Decl. ¶ 5.) Although Plaintiff contends that he was deprived of salary increases to which he would have been entitled in his former position, and this meant that Defendant would ultimately make lower contributions to his pension plan, there is no evidence that Plaintiff was guaranteed salary increases in his former position. Moreover, there is no evidence that FedEx contributed less to Plaintiff's pension plan after the reclassification. Thus, there is no evidence that the reclassification interfered with any right to which Plaintiff was entitled under FedEx's non-contributory plan.

In any event, even if Plaintiff's job reclassification resulted in a lower salary over time, and, therefore, diminished pension contributions by FedEx, it would be a classic example of a situation where the loss of pension benefits was "a mere consequence of, but not the motivating factor behind" the job reclassification, and thus not a violation of ERISA. *Dister*, 859 F.2d at 1111; *see also Lightfoot*, 110 F.3d at 906 (where ERISA claim is based only on assertion that the employer's actions deprived the employee of an opportunity to accrue additional pension benefits, summary judgment was appropriate where there was no evidence suggesting that pension interference was a motivating factor); *Burger v. Litton Indus., Inc.*, No. 91 Civ. 0918 (WK) (AJP), 1996 WL 421449, at *17–18 (S.D.N.Y. Apr. 25, 1996) (Report and Recommendation, adopted on Oct. 22, 1996) (granting summary judgment on ERISA claim where there was no evidence that termination was motivated by, or resulted in, reduction of benefits).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's ERISA claim.

19

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment **[30]** is

granted and Plaintiff's Complaints are dismissed with prejudice. The clerk is directed to

close the cases docketed 06 Civ. 482 and 07 Civ. 1288.

SO ORDERED.

Dated: New York, New York
        March 31, 2008

Richard J. Holwell
United States District Judge

20